**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TROY LAWRENCE, | ) | |
| | ) | **Case No. 09 CV 7213** |
| Petitioner, | ) | **Case No. 02 CR 200-1** |
| | ) | |
| v. | ) | **Wayne R. Andersen** |
| | ) | **District Judge** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the court on the petition of Troy Lawrence ("Petitioner" or "Lawrence"), as a prisoner in federal custody, for a writ of habeas corpus to correct his sentence pursuant to 28 U.S.C. §2255. For the reasons set forth below, the petition is denied.

**BACKGROUND**

On July 16, 2002, Lawrence was charged with the following counts in a multi-count indictment: (Count 1) conspiracy to distribute and posses with intent to distribute controlled substances within 1000 feet of an elementary school, in violation of 21 U.S.C. §§ 841(a)(1), 860, and 846; (Counts 11, 16, 21, 22, 23, 27, 28, and 36) use of a communication facility to carry out a drug distribution conspiracy, in violation of 21 U.S.C. § 843(b); (Count 2) money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(I); (Counts 19 and 26) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (Counts 17, 24, 37, and 38) possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); (Count 35) attempted possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); and (Counts 18 and 25) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and (B). (Dkt. No. 172 in case 02 CR 200).

A jury trial commenced on September 16, 2003. (Dkt. No. 540 in case 02 CR 200). The evidence the government presented at trial included intercepted phone calls originating from and involving Petitioner, text messages originating from and involving Petitioner, and testimony by several cooperating defendants. (Government's Resp. at 3). A jury found Petitioner guilty on December 18, 2003 of Counts 1, 11, 16, 17, 18, 21, 23, 24, 25, 26, 27, 35, 36, 37, and 38. (Dkt. No. 667 in case 02 CR 200).) The jury found Petitioner not guilty with respect to Count 28, and the Court dismissed Counts 2 and 22 against Petitioner. (*Id.*)

Petitioner made several motions before, during, and after the trial. One item that was the subject of multiple motions was the recording of intercepted calls. Petitioner filed motions to preclude these recordings on July 24, 2003 and September 21, 2003 (Dkt. Nos. 487 and 545, respectively, in case 02 CR 200), and he requested a hearing on this issue on October 28, 2003 (Dkt. No. 593 in case 02 CR 200). Petitioner made various arguments, objecting to the content of the captured conversations as well as the manner in which the recordings were handled. All three of the aforementioned motions were denied. (Dkt. Nos. 529 and 847 in case 02 CR 200).

Petitioner filed a motion for a new trial on February 3, 2004. (Dkt. No. 703 in case 02 CR 200). In that motion, Petitioner renewed all objections previously made, adopted all motions and objections made by his co-defendants, and argued that various errors had been made by the court, and that the evidence presented was insufficient to support a guilty verdict. The government responded on February 7, 2005, and Petitioner's motion for a new trial was denied on June 29, 2005. (Dkt. Nos. 796, 847 in case 02 CR 200).

Petitioner filed a motion to dismiss due to lack of jurisdiction on October 11, 2005 (Dkt. No. 952 in case 02 CR 200), and a supplement to his motion to suppress the Title III interceptions on October 18, 2005 (Dkt. No. 959 in case of 02 CR 200), both of which were

denied on January 27, 2006 (Dkt. Nos. 1024, 1025 in case of 02 CR 200). Petitioner proceeded to file objections to the Court's memorandum, which were subsequently denied. (Dkt. Nos. 1031, 1032 in case 02 CR 200).

Petitioner filed a notice of appeal with the Seventh Circuit on March 8, 2006 (Dkt. No. 1036 in case 02 CR-200), and the appeal was dismissed for lack of jurisdiction. (Dkt. No. 1057 in case 02 CR 200). Petitioner filed a motion for leave to appeal his conviction on May 16, 2006. (Dkt. No. 1062 in case 02 CR 200), which was denied on May 19, 2006. (Dkt. No. 1067 in case 02 CR 200).

Petitioner was sentenced to life imprisonment on June 14, 2006. (Dkt. No. 1079 in case 02 CR 200). Petitioner filed a request to correct his sentence on June 23, 2006, citing a lack of jurisdiction (Dkt. No. 1082 in case 02 CR 200), which was denied on June 28, 2006. (Dkt. No. 1083 in case 02 CR 200).

Petitioner filed a notice of appeal on June 21, 2006 (Dkt. No. 1076 in case 02 CR 200). Petitioner argued, along with other co-defendants, that his Sixth Amendment rights were violated because no individualized findings about drug quantity were made by the jury or by the district court. (Dkt. No. 1226 in case 02 CR 200). On March 24, 2008, the Seventh Circuit affirmed Petitioner's sentence. (Dkt. No. 1227 in case 02 CR 200).

Petitioner filed the instant petition to vacate, set aside, or correct his sentence on November 17, 2009. The government filed its response on March 26, 2010. (Dkt. No. 10 in case 09 CV 7213). Petitioner twice requested that the deadline for his reply be extended, and both of those requests were granted, ultimately extending Petitioner's reply deadline to July 9, 2010. (Dkt. Nos. 11, 12, 13, 14 in case 09 CV 7213). The court noted that the extension to July 9, 2010

would be the final extension. To date, Petitioner has not filed a reply, nor has he submitted another request for additional time.

## STANDARD OF REVIEW UNDER 28 U.S.C. §2255

The federal habeas corpus statute, 18 U.S.C. §2255, provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The court should grant a hearing on the issues raised in the petition unless the respondent demonstrates conclusively that the petitioner is not entitled to any form of relief. 28 U.S.C. § 2255. The court must grant a hearing if the habeas petition "alleges facts that, if proven, would entitle" the petitioner to relief. *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (citing *Pittman v. Warden, Pontiac Correctional Ctr.*, 960 F.2d 688, 691 (7th Cir. 1992)). The petitioner must make specific, detailed allegations in order to qualify for a hearing; conclusory statements are insufficient. *See Daniels v. United States*, 54 F.3d 290, 293-94 (7th Cir. 1995). Petitions filed by pro se petitioners will be held to a more liberal standard than those filed by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even under this more liberal standard, however, no hearing is required if the record conclusively demonstrates that the Petitioner is not entitled to any form of relief. *Daniels*, 54 F.3d at 293.

## ANALYSIS

Petitioner makes twelve arguments in his petition to vacate his sentence, including: (i) constitutionality of the Controlled Substance Act of 1970, (ii) lack of a on-going single conspiracy, (iii) violation of his Sixth Amendment rights, (iv) erroneously imposed mandatory life sentence, (v) violation of the Equal Protection Clause, (vi) erroneous jury instructions in

4

violation of Due Process rights, (vii) violation of the Speedy Trial Act, (viii) deprivation of his right to counsel of choice, (ix) insufficient evidence, (x) improper preservation of wiretap evidence, (xi) admission of improper and prejudicial testimony, and (xii) deprivation of effective assistance of counsel.

## I.      Constitutionality of the Controlled Substances Act of 1970

Petitioner argues his convictions, except for Count 26, should be vacated because the Controlled Substances Act of 1970 ("CSA") is facially unconstitutional. Petitioner argues the CSA is unconstitutional because it does not "contain an express jurisdictional element to establish the existence of a proper federal nexus on a case-by-case basis." (Pet.'s Mot. to Vacate at 2.) This argument lacks merit. Congress has the power to regulate the distribution of cocaine without requiring proof in each prosecution of some connection with interstate commerce. *United States v. Esposito*, 492 F.2d 6, 10 (7th Cir. 1973). The CSA is a valid exercise of Congress' power under the Commerce Clause. *United States v. Westbrook*, 125 F.3d 996, 1009 (7th Cir. 1997).

The petition is denied with respect to this first ground raised by Petitioner.

## II.     Single On-Going Conspiracy

Petitioner alleges he was not part of a single on-going conspiracy, but instead multiple conspiracies, if any, from the early 1990's through 2002. (Pet.'s Mot. to Vacate at 3.) As a result Petitioner claims his conviction should be vacated as the vast majority of the government's case is outside the five-year statute of limitations (18 U.S.C. §3282). *Id*. Petitioner alleges the evidence presented at trial did not support the conclusion of one on-going conspiracy.

A jury's factual determination will be upheld if any rational juror could have made the finding when viewing evidence in light most favorable to the government. *United States v.*

5

*Bullis*, 77 F.3d 1553, 1560 (7th Cir. 1996). In this case, while the conspiracy changed locations from Wentworth Gardens to Claude Court, the main participants, including Petitioner, remained the same. A slight variation in the method used to execute the scheme does not indicate that one conspiracy has ended and that another has begun. *United States v. Lynch*, 699 F.2d 839, 843 (7th Cir. 1983).

The petition is denied with respect to this second ground raised by Petitioner.

### III.     Sixth Amendment Violations

Petitioner alleges inadmissible testimony was admitted against him at trial, and he claims violations of his rights under the Sixth Amendment as he was not afforded the opportunity to confront certain witnesses, and statements made by co-defendants were improperly admitted at trial in violation of the law under *Bruton v. United States*, 391 U.S. 123 (1968). (Pet.'s Mot. to Vacate at 3.) *Bruton* concerns how out-of-court confessions by a non-testifying co-defendant can be introduced at trial. Specifically, courts are to prevent prejudicial statements against defendants, made by non-testifying co-defendants.

It is unclear exactly which witnesses or what testimony Petitioner is challenging. He simply makes broad statements about the case being based "in large part" on evidence he calls "suspect." (Pet.'s Mot. to Vacate at 3). Without any explanation as to what the allegedly objectionable testimony is or how such statements may have been prejudicial, the court cannot grant Petitioner the relief he is seeking.

In its response, the government goes through four possible arguments that Petitioner may be making, and squarely refutes each one based on the case record. First, the government addresses the possibility that Petitioner is "challenging the introduction of wiretap calls involving his codefendants," and the government notes that the claim was previously rejected by the court,

6

and is also meritless, because such conversations are admissible under FRE 801(d)(2)(E), because the conversations were in furtherance of the charged conspiracy. (Government's Resp. at 12-13). Second, the government addresses the possibility that Petitioner's objection relates to "the testimony of witnesses who explained recorded phone conversations in which they did not participate," which is another argument that was also previously rejected by the court. (Government's Resp. at 13). Third, the government turns to the testimony by defendants/co-conspirators who pled guilty, correctly explaining that such testimony was "either not hearsay or was admissible as statements of the defendant, statements admissible as co-conspirator statements, statements not offered to prove the truth of the matter asserted, or for other reasons." (Government's Resp. at 13). Fourth, if Petitioner is objecting to the testimony of non-testifying co-defendant Nyroby Seymour, in which Seymour acknowledged that a bag of crack fell out of his pocket when he was searched by police, this statement by itself does not support the conclusion of a prejudicial effect on the Petitioner.

The petition is denied with respect to this third ground raised by Petitioner.

**IV.    Mandatory Life Sentence and Qualifying Convictions**

Petitioner alleges he does not have the necessary qualifying convictions pursuant to 21 U.S.C. § 841(b)(1)(A) that would require a mandatory life sentence. (Pet.'s Mot. to Vacate at 3.) This statute mandates an individual be sentenced to life imprisonment if he or she has two or more previous felony drug convictions. 21 U.S.C. § 841(b)(1)(A)(viii). Petitioner had three prior felony convictions, resulting in a mandatory life sentence.

As the government notes, it is unclear exactly why Petitioner believes his prior convictions do not support a mandatory life sentence. Similar to the previous section, the

government makes Petitioner's potential arguments for him, then explains why each potential argument would be meritless.

The government first addresses the possibility that Petitioner might be challenging the sentence because he pled guilty to all three previous charges on the same day. (Government's Resp. at 14). Offenses that resulted in separate arrests, were indicted separately, and had separate case numbers constitute separate offenses, regardless of whether an individual enters pleas for the offenses on the same day. *See United States v. Maxwell*, 160 F.3d 1071, 1076 (6th Cir. 1998). Furthermore, as the government points out, under the Guidelines, "'prior sentences imposed in unrelated cases are to be counted separately' if they were separated by an intervening arrest, as is the case with [Petitioner]'s prior convictions." (Government's Resp. at 14 (quoting U.S.S.G. § 4A1.2(a)(2))).

Next the government turns to the possible argument that the convictions might not count because they resulted in concurrent sentences. (Government's Resp. at 14). There is no requirement in the plain language of 21 U.S.C. § 841(b)(1)(A) that the sentences for the underlying convictions must have been consecutive – only that two or more must exist.

Finally, the government raises the possibility that Petitioner might be challenging the validity of his three prior convictions. (Government's Resp. at 14). The prior convictions are considered presumptively valid (*see, e.g., Daniels v. United States*, 532 U.S. 374, 382 (2001)), and Petitioner has given the court no reason to think otherwise.

The petition is denied with respect to the fourth ground raised by Petitioner.

**V.      Equal Protection Clause**

Petitioner alleges his conviction violates the Equal Protection Clause because his sentence is disproportionate to what he would have received if the offenses involved powder

cocaine instead of crack. (Pet.'s Mot. to Vacate at 3.) Petitioner argues the disparity between penalties involving powder cocaine and crack violates the Equal Protection Clause and that his conviction does not mandate a mandatory life sentence. *Id*. The Seventh Circuit has "repeatedly rejected constitutional challenges to the different statutory minimums for crack and powder cocaine." *United States v. Villa*, 2010 WL 1490368 at *1 (7th Cir. 2010) (citing *United States v. Taylor*, 522 F.3d 731, 736 (7th Cir. 2008); *United States v. Trice*, 484 F.3d 470, 476 (7th Cir. 2007); *United States v. Westbrook*, 125 F.3d 996, 1010 (7th Cir. 1997); *United States v. Baker*, 78 F.3d 1241, 1248 (7th Cir. 1996); *United States v. Smith*, 34 F.3d 514, 525 (7th Cir. 1994); *United States v. Lawrence*, 951 F.2d 751, 754-55 (7th Cir. 1991)).

The petition is denied with respect to this fifth ground raise by Petitioner.

**VI.    Jury Instructions**

Petitioner argues the trial court's instructions to jurors on reasonable doubt, conspiracy, elements of offenses, witness testimony, and presumptions were erroneous and violative of due process requiring his convictions be vacated. (Pet.'s Mot. to Vacate at 4.) When seeking collateral relief on the basis of flawed jury instructions, a prisoner must show that "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *United States v. Frady*, 456 U.S. 152, 168-69 (1982) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Cupp v. Naughten*, 414 U.S. 141, 147, 146 (1973)) Petitioner has made no such showing here.

The petition is denied with respect to the sixth ground raised by Petitioner.

## VII. Speedy Trial Act

Petitioner alleges he was not indicted and tried within the time limit required by the Speedy Trial Act. (Pet.'s Mot. to Vacate at 4.) The Speedy Trial Act requires that the government return an indictment, move to dismiss the complaint or seek an extension of time to indict within thirty days after arrest." *United States v. Ousley*, 100 F.3d 75, 76 (7th Cir. 1996) (citing 18 U.S.C. § 3161(b)). "The Act also allows the district court to exclude certain periods of time from the computation of delay." *Ousley*, 100 F.3d at 76 (citing *United States v. Leiva*, 959 F.2d 637, 640 (7th Cir. 1992)). A petitioner complaining of erroneous time exclusion must make a showing of "actual prejudice." *Ousley*, 100 F.3d at 76.

The government points out that Petitioner failed to object when the time period for indictment was twice extended by orders of the Chief Judge. (Government's Resp. at 1-2, 16). Petitioner makes no argument that he actually did object to the extensions or that his failure to object should be excused for any reason. Furthermore, even if the extensions had been improper, Petitioner fails to provide any argument as to how he suffered any actual prejudice from that delay.

The petition is denied with respect to the seventh ground raised by Petitioner.

## VIII. Right to Counsel

Petitioner alleges he was not afforded his right to counsel, because governmental intrusion prevented Mr. Ettinger from representing Petitioner. (Pet.'s Mot. to Vacate at 4). A district court need not grant an evidentiary hearing if the motions, files, and records demonstrate that the petitioner is not entitled to relief. *Bruce v. Unites States*, 256 F.3d 592, 597 (7th Cir. 2001) (citing 28 U.S.C. § 2255). "In addition, a hearing is not necessary if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than

'detailed and specific.'" *Bruce*, 256 F.3d at 597 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). There is no record that indicates the government attempted to disqualify Mr. Ettinger from representing Petitioner. On March 8, 2002, shortly after Petitioner's arrest, Joseph Alan Ettinger entered an appearance on behalf of Petitioner. (Dkt. No. 62 in case 02 CR 200). On March 13, 2002, Sharon Goldstein Kramer entered an appearance on behalf of Petitioner. (Dkt. No. 97 in case 02 CR 200). The record does not indicate why Mr. Ettinger did not continue to represent Petitioner, and absent a specific allegation that demonstrates Petitioner has proof of improper governmental interference, there is no need for the court to grant a hearing.

The petition is denied with respect to the eighth ground raised by Petitioner.

## IX. Lack of Evidence

Petitioner alleges a lack of evidence to support to each count of his conviction. (Pet.'s Mot. to Vacate at 4). This argument lacks merit. As the Seventh Circuit has stated, "[I]t is well settled that questions as to the sufficiency of the evidence or involving errors of law or fact at the trial, must be raised by appeal from the judgment of conviction and not by a petition under section 2255." *United States v. Schultz*, 286 F.2d 753, 754-55 (7th Cir. 1961). Additionally, Petitioner raised this argument in his post trial motion for a new trial (Dkt. No. 703 in case 02 CR 200), which this Court denied on June 29, 2005 (Dkt. No. 847 in case 02 CR 200).

The petition is denied with respect to the ninth ground raised by Petitioner.

## X. Admissibility of Wiretap Evidence

Petitioner alleges the wiretap evidence admitted against him was not properly preserved and was tainted. From this, Petitioner alleges violations of the Fourth Amendment and 18 U.S.C. § 2510. (Pet.'s Mot. to Vacate at 4.) Petitioner is prevented from making this argument as he did

11

not make this argument on direct appeal. *See United States v. Schultz*, 286 F.2d 753, 755 (7th Cir. 1961).

Furthermore, this court previously addressed this issue on June 29, 2005, and stated as follows:

> The statute does not require the sealing of an original recording. Rather with regard to the recordings, the statute requires that the intercepted communications, one, be recorded on tape or wire or "other comparable device" and, two, be recorded "in such a way as will protect the recording from editing or other alterations."
>
> As applied to the technology used by the DEA, the MO disks meets these requirements. One, it is a comparable device on which the communications are recorded and, two, the calls were recorded in a way that protects against editing and alteration.

(6/29/05 Tr. at 6). *See also United States v. McLee*, 436 F.3d 751, 763-765 (7th Cir. 2005).

The petition is denied with respect to the tenth ground raised by Petitioner.

## XI. Admission of Allegedly Imrpoper and Prejudicial Testimony

Petitioner alleges that a reference to the motion picture "New Jack City" made by a Chicago Police Officer portrayed Petitioner in a prejudicial light, requiring a mistrial. (Pet.'s Mot. to Vacate at 4). Having been presented with this argument on a previous occasion, the court stated the following:

> [M]ention of the film was relevant to explain phrases printed on the leather jackets given to members of the conspiracy by Troy Lawrence. One phrase relevant to the existence of the conspiracy which is found on the jackets, Till Death Do Us Part, was used by characters in the film and Troy's nickname Nino, N-i-n-o, is the name of one of the film's main characters. The Court limited discussion of the film to explain the phrases and not the film's content. And no prejudice related, much less sufficient prejudice to grant a motion for mistrial.

(6/29/05 Tr. at 17).

The petition is denied with respect to the eleventh ground raised by Petitioner.

**XII.    Ineffective Assistance of Counsel**

Petitioner alleges he was not afforded effective assistance of counsel.  Petitioner alleges that his counsel rendered ineffective assistance in six ways: (i) counsel created a conflict of interest when counsel failed to honor Petitioner's desire to testify on his own behalf, (ii) counsel failed to investigate and present a defense on Petitioner's behalf, (iii) counsel failed to investigate, research, and advance the aforementioned grounds one through ten, (iv) counsel failed to raise any claims concerning improper grand jury composition, and (v) trial counsel failed to raise any claims concerning equal protection, due process, and fair cross section with respect to venire and jury selection and (vi) appellate counsel rendered ineffective assistance of counsel by failing to investigate, research, and advance the aforementioned grounds one through ten.  (Pet.'s Mot. to Vacate at 5).

Ineffective assistance of counsel claims are examined under the two-pronged test established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  This general test focuses on "the legal profession's maintenance of standards" rather than a critique of counsel's performance. *Id*. at 688. The Petitioner must meet both prongs of the *Strickland* test or the claim fails. *Id*. at 687.

The first prong, the performance prong, examines whether counsel's defense meets the standard of "reasonably effective assistance." *Id*. To satisfy this prong, the Petitioner must affirmatively demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In making this determination, the court is to give a high level of deference to counsel because it is all too easy in hindsight, after the Petitioner has lost his case, to find that counsel's lack of success fell below the level of representation required by counsel to provide. *Id*. at 689. The Petitioner must provide clear evidence, in the form of specific acts or

omissions, to overcome this presumption. *Id*. at 689-90. The court must view the facts that the Petitioner presents from the perspective of counsel at the time of the conduct alleged to be inadequate. *Id*. at 689.

The second prong, the prejudice prong, examines whether counsel's act or omission had an adverse effect on the defense. *Id*. at 692. This prong protects against the situation where counsel may have acted unreasonably but the unreasonable act or omission did not prejudice the Petitioner's defense. *Id*. at 691-92. To satisfy this prong, the Petitioner must affirmatively demonstrate the prejudice that resulted, and must further demonstrate that there is a "reasonable probability" that his attorney's acts or omissions affected the outcome. *Id*. at 693-94. The court should make this determination in light of the totality of the evidence. *Id*. at 695.

### A. Petitioner Testifying for Himself

Petitioner claims his counsel prevented him from testifying at trial. (Pet.'s Mot. to Vacate at 5). The record indicates that Petitioner had the opportunity to testify, but on November 24, 2003, after being fully informed of his right to testify, Petitioner personally indicated to the court that he did not wish to testify. (11/24/03 Tr. at 5455).

### B. Defense Counsel's Failure to Present a Defense

Petitioner alleges his trial counsel failed to investigate and present a defense on Petitioner's behalf. (Pet.'s Mot. to Vacate at 5). However, Petitioner provides no details as to exactly how he believes counsel's performance to have been deficient. The mere fact that the trial had an undesirable outcome for the Petitioner does not mean that his lawyer failed to adequately defend him. Petitioner has failed to provide the Court with any specific information as to what further investigation would have produced and, more specifically, how the lack of an investigation caused a prejudicial effect on Petitioner. In the absence of such information, a

14

hearing need not be granted. *See, e.g., Richardson v. United States*, 379 F.3d 485, 488 (7th Cir. 2004).

### C. Defense Counsel's Failure to Advance Grounds One through Ten

Petitioner alleges his counsel rendered ineffective assistance of counsel by failing to investigate, research and advance grounds one through ten. (Pet.'s Mot. to Vacate at 5). Petitioner's counsel did raise several of the arguments, including sufficiency of the evidence and wiretap issues. With respect to the other arguments raised in this petition, as discussed above, Petitioner has failed to demonstrate that any of these arguments have merit and thus would require a hearing. Counsel is not ineffective for failing to pursue meritless arguments, and Petitioner has not shown that counsel's choice to pursue such arguments would have altered the outcome of the proceedings.

### D. Grand Jury Composition

Petitioner argues his counsel should have raised issue with the grand jury composition. (Pet.'s Mot. to Vacate at 5). Petitioner fails to indicate exactly how the composition of the grand jury was improper – there is no argument as to who was improperly included or excluded, or any other discussion about the grand jury at all. As a result these claims are vague and do not require a hearing. *See Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006).

### E. Venire / Trial Jury

Petitioner argues his trial counsel was ineffective because he did not raise any claims pertaining to equal protection, due process, and fair cross section violations with respect to the venire the trial jury was selected from. (Pet.'s Mot. to Vacate at 5). Once again, Petitioner has failed to provide any details as to exactly how the selection of the trial jury was improper or unfair, and such unsupported accusations do not merit a hearing. Furthermore, as stated above,

Petitioner must demonstrate that counsel was unreasonable for failing to raise these arguments, and that raising these arguments would have resulted in a different outcome. Petitioner has made no such showing.

   **F. Appellate Counsel**

Lastly, Petitioner argues his appellate counsel was ineffective because he did not investigate, research, and further grounds one through ten. (Pet.'s Mot. to Vacate at 5).

> An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. However, counsel is not required to raise every non-frivolous issue on appeal. There is a strong presumption that counsel's performance is reasonable and this presumption has particular force when the ineffective assistance claim is based solely on the trial court record.

*Martin v. Warden*, 384 F.3d 848, 851 (7th Cir. 2004) (internal citations omitted).

Petitioner has failed to allege a claim that appellate counsel should have raised on appeal that has merit. Further, Petitioner has failed to demonstrate that raising one of the previous arguments would have had the reasonable probability of leading to a different result.

For all of the reasons stated above, Petitioner's claim of ineffective counsel fails, and the petition is denied with respect to the twelfth ground raised by Petitioner.

## CONCLUSION

For the foregoing reasons, Petitioner Tory Lawrence's petition to correct his sentence pursuant to 28 U.S.C. § 2255 [1] is denied. This is a final and appealable order, and this case is hereby terminated.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: July 30, 2010